**Roy O. West et al., Appellees, v. Albert Mohr, Appellant.**

**Gen. No. 19,971.**

ATTORNEY AND CLIENT, § 105*—*when relation not antagonistic.* Where an attorney at law represents two parties whose interests in some degree conflict, but with the knowledge and at the request of both, and where his duties are mainly that of affording a chan-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

nel of communication between them, but which does not impose upon the attorney any conflicting duties, or contemplate litigation, there is not such impropriety or inconsistence in the conduct of the attorney as to amount to a defense to a promise by one of the parties to pay the attorney for his services.

Appeal from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed October 5, 1915.

FRANK FOSTER, for appellant.

WEST & ECKHART, for appellees.

MR. JUSTICE BAKER delivered the opinion of the court.

In 1913, appellees West, Eckhart, Rothmann & Deering were practicing law in Chicago as copartners under the firm name of West & Eckhart. This appeal brings before us for review a judgment recovered by appellees, plaintiffs, against appellant Mohr, defendant, for $500, June 25, 1913.

The evidence in the case other than the opinion evidence as to the value of plaintiffs' services, consists of the testimony of plaintiff Eckhart, defendant Mohr, and Charles Warren, called as a witness by defendant. The testimony is conflicting, but from it we think the jury might properly find the following facts: Mrs. Geary called at the office of the plaintiffs January 6, 1913, and there saw Eckhart, one of the plaintiffs, and told him that she had a claim against defendant. Eckhart called defendant Mohr on the telephone, told him that Mrs. Geary had been at his office, and told him of the claim she said she had against him, and asked him to come to his office about it. January 10th, Mohr and Warren came to plaintiffs' office and there saw Eckhart. Mohr asked what Mrs. Geary wanted. Eckhart told him she wanted money from the story she told, and Mohr replied, "I am not going to pay her anything. I do not owe her any money." Eckhart

said, "Mr. Mohr, she said you had been paying her for
many years and been supporting her all this time; she
says that you have been acquainted with her and sup-
porting her in this city and giving her all the money
she had, and she also claims you promised to support
her the rest of her life; she says you cannot stop now."
Eckhart further told Mohr that the plaintiffs would
not sue or take the case into court or make any claim;
that it was a nasty thing to have in the office, and that
it was only because Mrs. Geary begged them to call up
Mr. Mohr and said that was all that would be neces-
sary, that he took the matter; that if she insisted on
pressing the claim and making trouble, as she said she
could, she would have to get another lawyer; that when
he said that, Mohr said, "I will pay your fee." Eck-
hart replied "All right," and Mohr said, "I want you
to stay in the case;" that Mohr said, "I will pay her
$500, but I want a release and have no more trouble af-
ter this," and Eckhart told him that he was not going
to advise him on the matter; that a release would not
prevent her from making a claim in the future; that
she wanted $2,000 at once and assurance that the $200
a month he had been sending her would be sent regular-
ly. Mohr said, "Well, you talk with the woman and
offer her $500, and if she is satisfied with that I will
pay her $500." Eckhart said, "I will tell her what you
offer, and if she consents to my negotiating with
you under the circumstances, I will communicate with
you later;" that he thought he also told Mohr that she
said he was responsible for her ill condition of health,
and that she suffered from a miscarriage some years
ago, for which he was responsible; that Mr. Mohr said
he wanted Eckhart to act in the capacity of a sort of
peacemaker and negotiator between the parties and
get Mrs. Geary out of town, and did not want a crim-
inal lawyer in the case; that a few days later Eckhart
telephoned defendant that he had seen Mrs. Geary,
told her what Mohr said about his staying in the case
and his offer to pay his fee, and that Mrs. Geary was

agreeable to that arrangement, and wanted Eckhart to stay in the case, but said she would not accept $500; that the least she would take was $2,000, and that Mohr said he would call and see Eckhart. He did not do so, but sent Mrs. Geary $100, and a few days later sent her $1,000, and about January 20th, Mrs. Geary left the city. Eckhart then asked him to send a check for $500 for his services, and Mohr said, "That is too much." In fact he did not pay anything, and this suit was brought.

Whatever may have been Mrs. Geary's intention when she first went to plaintiffs' office, she was promptly informed by Eckhart that plaintiffs would have nothing to do with any suit against Mohr. She then asked him to tell Mohr of her claim, and said that would be all that would be necessary. Eckhart told Mohr of Mrs. Geary's claim, and it is clear that Mohr desired to avoid litigation and desired the services of Eckhart as a peacemaker and negotiator, and offered to pay him for such services. Eckhart consented to act in that capacity only in case Mrs. Geary consented to his doing so. She consented to the arrangement and expressed her desire that Eckhart remain in the case.

We have, then, a case where litigation was not desired by either party, where each party desired Eckhart to conduct the negotiations, and Mohr promised to pay him for his services. Eckhart communicated to Mohr the counter-proposition made by Mrs. Geary, and Mohr, after promising to call on Eckhart, took the matter into his own hands, for he testified that he paid Mrs. Geary $1,100, not on any one's advice, but of his own accord. The arrangement arrived at seems to have been satisfactory to both parties. On receiving the $1,100 from Mohr, Mrs. Geary left Chicago.

Eckhart, it is true, represented two parties whose interests were conflicting. Mrs. Geary desired to get a comparatively large sum of money from Mohr, and Mohr desired to be relieved from her demands by paying her a comparatively small sum; but no conflicting

duties were imposed on Eckhart. His chief duty was to furnish a channel of communication between the parties. He disclosed to each party his relation to the other and acted with the consent of both.

We see no impropriety or inconsistency in his acting for both parties under the circumstances, nor any just ground for the refusal of Mohr to fulfil his promise to pay him for his services, and the judgment is affirmed.

*Affirmed.*